UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| CHRISTOPHER HILDERBRANT,<br><br>                                                    Plaintiff,<br><br>- against -<br><br>THE CITY OF ROCHESTER, ANDREW DELDUCA, BING REAVES, ANTHONY MAZURKIEWICZ, MICHAEL DIPAOLA, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), TODD BAXTER, "RICHARD ROE SHERRIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office,<br><br>                                                    Defendants. | **MEMORANDUM OF LAW**<br><br>**IN SUPPORT OF DEFENDANTS' MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT**<br><br>Case no: 6:21-cv-06714 |

_____

**PRELIMINARY STATEMENT**

Plaintiff pays great attention to the emotion and righteousness of the circumstances that gave rise to this suit. When one focuses on the law, however, it is apparent that Plaintiff has failed to allege sufficient facts to support mere plausibility of at least six of his thirteen claims for relief.

As such, Defendants City of Rochester, Andrew Delduca, Bing Reaves, Anthony Mazurkiewicz, and Michael DiPaola (collectively "City Defendants") move to dismiss Plaintiff's first, seventh, eighth, eleventh, twelfth, and thirteenth claims for relief.

City Defendants are entitled to dismissal, or alternatively summary judgment[1]—of these claims, because Plaintiff failed to plead the provide sufficient facts to support his claims.

---

[1] This court may, under FED. R. CIV. P. 56, choose to convert City Defendants' motion to dismiss Plaintiff's seventh cause of action into a motion for summary judgment, as City Defendants reference a Local Emergency Order in effect in September 2020 (Jones Declaration, Exhibit B), which was not pled by Plaintiff.

## STATEMENT OF FACTS

The following facts are assumed to be true for purposes of this motion only.

Plaintiff participated in public demonstrations on the night of September 4-5, 2020 (Amended Complaint ¶¶ 19, 23) with hundreds or possibly thousands of other protestors (Amended Complaint ¶¶ 21, 17). During the September demonstrations, he was hit with pepper balls, seized by law enforcement, thrown to and dragged on the ground, handcuffed, and arrested. (Amended Complaint ¶¶ 23-26, 28-29). City of Rochester Police Department ("RPD") officers "failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct." (Amended Complaint ¶ 146.)

Plaintiff now brings suit for thirteen claims: assault and battery (Amended Complaint ¶¶ 102-114), unlawful seizure/false arrest (Amended Complaint ¶¶ 123-134), negligent supervision, training, and discipline by the City[2] (Amended Complaint ¶¶ 169-173), negligence by the City in planning its response to the protest (Amended Complaint ¶¶ 174-191), and officers' negligence (Amended Complaint ¶¶ 192-198) (all) under state law; and excessive force (Amended Complaint ¶¶ 91-101), unlawful seizure/false arrest (Amended Complaint ¶¶ 114-122), First Amendment infringement and retaliation (Amended Complaint ¶¶ 135-142), failure to intervene (Amended Complaint ¶¶ 143-149), and municipal/*Monell* liability for the constitutional violations (Amended Complaint ¶¶ 85-87) (all) under 42 USC § 1983.

The City is liable for the officers' actions under respondeat superior for Plaintiff's claims for assault and battery and unlawful seizure, because "RPD officers were at all times agents, servants,

---

[2] Plaintiff also brought claims against Monroe County for negligent supervision, training, and discipline (Amended Complaint ¶¶ 183-188) and negligence in planning its response to the protest (Amended Complaint ¶¶ 189-201), but those claims are not address herein.

2

and employees acting within the scope of their employment by Defendant City." (Amended Complaint ¶¶ 4, 108-109, 132.)

Law enforcement officers had a duty—a "special duty"—to protect the protestors and their rights. (Amended Complaint ¶¶ 176.) The City failed to ensure law enforcement could properly police protests and demonstrations (Amended Complaint ¶ 49) and "breached its duty to keep demonstrators safe" (e.g., Amended Complaint ¶¶ 179, 185-189). Practically speaking, "[the City] approved the force during the demonstrations because its policies authorized excessive levels of force" (Amended Complaint ¶ 64).

The City's Mobile Field Force ("MFF"), which is described in detail (Amended Complaint ¶¶ 51-56), uses "military tactics" to disperse and demoralize protestors (Amended Complaint ¶¶ 53-54). The [MFF] training does not address Fourth Amendment rights of protestors (Amended Complaint ¶ 56) and no other City training teaches "peaceful crowd control" (Amended Complaint ¶ 170): "neither the MFF's 'civil disorder' training and guidelines, nor, upon information and belief, any related RPD training, contain meaning direction on the core First, Fourth or Fourteenth Amendment principles that must guide constitutional policing of First Amendment assemblies" (Amended Complaint ¶ 56; see also ¶ 65).  As such, law enforcement utilized considerable "violence" and "weapons" during the protests. (Amended Complaint ¶ 47.)

The City, moreover, knew or should have known that its officers would respond in an unconstitutional manner to protestors due to deficient training, because of similar, unacceptable responses at an October 2009 anti-war protest, a May 2015 one-woman protest, and a July 2016 racial justice protest. (Amended Complaint ¶ 59.) At the October 2009 and May 2015 protests, which were attended by at least fifteen and seventy-five people, respectively), protesters were also shoved, hit, pepper sprayed, and arrested. (Amended Complaint ¶ 59.)

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (internal quotations omitted), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must also draw all reasonable factual inferences in the Plaintiff's favor, they may decline to accept legal conclusions that plaintiffs present as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. at 678.

## ARGUMENT

I. **PLAINTIFF HAS FAILED TO PROVIDE FACTS FOR A PLAUSIBLE MUNICIPAL LIABILITY CLAIM UNDER THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS, SO THIS THEORY OF LIABILITY MUST BE DISMISSED.**

*Monell* established a theory of liability, in which Plaintiffs may assert municipal liability for constitutional violations in one of three ways: through (1) an official municipal policy or decision, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978); (2) a custom, *Monell*, 436 U.S. at 691; or (3) deliberate indifference to the known, unconstitutional effects of the municipality's failure to train its employees, *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Plaintiffs must plead (and later prevail on) a constitutional violation before reaching municipal liability. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.")

Municipal liability via a custom is created when a municipality, through its inaction, approves of or adopts the persistent behaviors of its employees. *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

The failure to train or deliberate indifference standard is a "stringent" one, *Connick v. Thompson*, 563 U.S. 51, 61 (2011), because municipal liability attaches only where "the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights[.]" *Reynolds*, 506 F.3d at 192, citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Because municipal decisionmakers must have notice that a training deficiency causes employees to violate constitutional rights, *Connick*, 563 U.S. at 61, it is "ordinarily necessary" to plead a "a pattern of similar constitutional violations by untrained employees" for liability pursuant to failure to train. *Connick*, 563 U.S. at 62. The violations, moreover, must be incredibly similar. For example, in *Connick*, the Supreme Court held that four *Brady* violations over ten years did not provide adequate notice of a need to train employees, because they pertained to different types of undisclosed material than the one affecting plaintiff. *Connick*, 563 U.S. at 62-63. ("None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.")

"[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007); *City of Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.")

Lastly, the facts to establish municipal liability must also closely relate to the alleged injury or violation experienced by the claimant. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

Plaintiff alleges all three methods of establishing *Monell* liability for each constitutional violation, and as such he must plead all three methods for municipal policy for the First, Fourth, and

5

Fourteenth Amendments. Unsurprisingly, he fails to meet this burden, so (all of) his *Monell* liability claims must be dismissed.

### A. Fourteenth Amendment

Because municipal liability is only a theory of liability, plaintiff must plead a constitutional violation for which he seeks to assert municipal liability. *Segal*, 459 F.3d at 219. Plaintiff, however, does not include any constitutional violations under the Fourteenth Amendment; he pleads only First and Fourth Amendment violations. Without such a claim, this court must dismiss his claims for municipal liability under the Fourteenth Amendment. Even if Plaintiff had pled a Fourteenth Amendment violation, he declined to describe a policy, custom, or deliberate indifference to training failures by the City in support of its *Monell* liability claim for Fourteenth Amendment violations. Plaintiff's only treatment of the subject are a few conclusory statements (e.g., Amended Complaint ¶¶ 56, 65).

### B. Fourth Amendment

Plaintiff does not identify the specific Fourth Amendment right(s) for which he alleges *Monell* liability (Amended Complaint ¶¶ 85-87). Plaintiff, however, pled excessive force and unlawful seizure/false arrest claims pursuant to 42 U.S.C. § 1983 (Amended Complaint ¶¶ 91-101, 114-122), so his facts indicative of municipal liability must relate to one of those claims.

Plaintiff's Amended Complaint contains one conclusory statement regarding the existence of a policy: "[The City] approved the force during the demonstrations because its policies authorized excessive levels of force" (Amended Complaint ¶ 64). This is a conclusory statement disguised as a fact, and as such, is insufficient to establish *Monell* liability pursuant to a "a policy statement, ordinance, regulation, or decision officially adopted" by the City. *Monell*, 436 U.S. at 691.

Plaintiff omits any allegation of a City custom of violating the Fourth Amendment, and instead alleges that the City is deliberately indifferent to the violations caused by its training failures. Plaintiff

6

provides three examples to establish the City knew or should have known of the deficiencies in its training: an October 2009 anti-war protest, a May 2015 one-woman protest, and a July 2016 racial justice protest. (Amended Complaint ¶ 59.) These examples are not, however, sufficient to give notice of training failures. Although they differ greatly in size (i.e., fifteen in 2009 and 75 in 2016), only the October 2009 and May 2015 share multiple facts with the September 2020 protest at-issue here: protesters being shoved, hit, pepper sprayed, and arrested in a protest attended by a more than a dozen people. If a single constitutional violation rarely, if ever, provides sufficient notice of training failures, *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016), two vaguely similar circumstances occurring six years apart also do not provide notice of constitutional violations.[3] Prior constitutional violations must be incredibly similar to present ones, in order to claim an employer had notice. *Connick*, 563 U.S. at 62-63. These proffered examples do not constitute a pattern of constitutional violations, *Connick*, 563 U.S. at 62, nor a "need to act [that] is so obvious" *Reynolds*, 506 F.3d at 192.

Plaintiff devotes multiple paragraphs to discuss the City's Mobile Field Force ("MFF") and corresponding training, but these too fail to suffice for *Monell* liability. (Amended Complaint ¶ 51-56.) According to Plaintiff, MFF inappropriately applies "military tactics" to disperse and demoralize protestors. (Amended Complaint ¶¶ 53-54.) However, Plaintiff's disapproval of the City's choice regarding training is irrelevant to *Monell* liability. See *Reynolds v. Giuliani*, 506 F.3d at 193; *City of Canton*, 489 U.S. at 391. Plaintiff needed—and failed—to plead that the City's training *led to a pattern of constitutional violations*, and even knowing of those injuries, the City persisted with its training. Furthermore, Plaintiff only alleges the City utilized MFF training during the 2020 protests (Amended Complaint ¶ 52), and not during the prior incidents that allegedly provided notice of the

---

[3] Even assuming the October 2009 and May 2015 protests presented similar circumstances as the September 2020 protests, Plaintiff nowhere alleges that the October 2009 and May 2015 arrests were unlawful or the force utilized was excessive. He suggests officers' racial animus led to constitutional violations, but since that differs from violations described here, those incidents did not and could not give the City notice of Plaintiff's variety of Fourth Amendment violations.

failure to train (Amended Complaint ¶ 59). As such, the MFF cannot be part of a "pattern of constitutional violations" necessary for *Monell* liability under a failure to train. Because the Plaintiff has failed to provide facts of a policy, custom, or failure to train, his municipal liability claim under the Fourth Amendment must be dismissed.

    C. <u>First Amendment</u>

    To successfully plead a *Monell* claim for First Amendment violations, Plaintiff must allege an official policy or action, a custom, or a deliberate indifference to a known failure to train *regarding his First Amendment violations*. Plaintiff fails to do this, because although he discuss the City's responses to protests at length—he focuses on *Fourth* Amendment violations. The exercise of First Amendment rights merely provides the context or background for his Fourth Amendment violations. He never alleges that the City had an official policy or custom of infringing upon free speech or assembly rights, nor alleges protestors' free speech were violated during the City's response to protests. Instead, Plaintiff takes issue with the "violence" and "weapons"—i.e., force—utilized *during protests*. (Amended Complaint ¶ 59.) Plaintiff has failed to provide facts indicating a City custom or deliberate indifference by City officials regarding First Amendment infringement, and thus his municipal liability claim must be dismissed.

    II.    **PLAINTIFF'S SEVENTH CLAIM MUST BE DISMISSED, BECAUSE HE ONLY PLEADS FREE SPEECH CLAIMS, AND THE CITY IMPOSED REASONABLE RESTRICTIONS ON FREE SPEECH.**

    The First Amendment to the United States Constitution prohibits Congress from making laws "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceable to assemble, and to petition the Government for a redress of grievances." Plaintiff appears to plead all of these rights as his seventh claim for relief.

Defendant City moves to dismiss the parts of this cause of action that pertain to the establishment clause, free exercise of religion, freedom of the press, right to assemble, or the right to petition the Government. The Amended Complaint contains no hint of religion, the press, or petitions; the Amended Complaint provides facts only regarding Plaintiff's exercise of his "freedom of speech." Defendants acknowledge that Plaintiff participated in a protest with hundreds of other protestors (Amended Complaint ¶¶ 21, 17), but he does not allege that his right to assemble has been violated. Without allegations that Defendants prevented his from assembling with others, claims regarding the "right to assemble" must also be dismissed from this claim. All rights protected by the First Amendment other than "free speech"—i.e., establishment clause, free exercise of religion, freedom of the press, right to assemble, or the right to petition the Government—must be dismissed from Plaintiff's umbrella claim of "First Amendment Infringement," because Plaintiff failed to factually support violations of those rights.

Defendants also move to dismiss the free speech claim, because this court has already found that the City complied with reasonable time, place, and manner restrictions on free speech.

Plaintiff also declined to plead that (1) City of Rochester Mayor Warren enacted an Emergency Order on September 3, 2020, that prohibited gatherings of five or more between the hours of 11:00pm to 5:00am (Jones Declaration, Exhibit C); (2) the protests at-issue occurred (on September 4 and 5, 2020 (Amended Complaint ¶¶ 19, 23) when the Local Emergency Order was in effect; and (3) less than one month ago, this court declined to grant plaintiffs' demand for a preliminary injunction against the Emergency Order,[4] *Martin v. Warren*, 482 F.Supp.3d 51 (W.D.NY. 2020). The court held that the plaintiffs had not shown that a "likelihood of success of the merits," because the

---

[4] As noted by Judge Siragusa, a Local Emergency Order may remain in effect for five days, and the Mayor reissued the order each time is expired. As such, multiple, identical Local Emergency Orders existed throughout the relevant time period and the Emergency Order was in effect on the date of his August 26, 2020 decision. *Martin v. Warren,* 482 F.Supp.3d 51, 57, 54 (W.D.NY. 2020).

Local Emergency Order satisfied the *Ward [v. Rock Against Racism*, 491 U.S. 781 (1989)] requirements for reasonable time, place, and manner restrictions on the exercise of free speech. *Martin,* 482 F.Supp.3d at 68-79. The Local Emergency Order was content neutral, narrowly tailored to serve the significant government interest (of curbing both gun violence and COVID-19 transmission), and left alternative channels for First Amendment exercise. *Martin*, 482 F.Supp.3d at 68-79. Because it is inconsistent with this district court's decision to claim the City violated Plaintiff's free speech by enforcing these court-approved restrictions, Plaintiff's free speech claim must also be dismissed.

### III. PLAINTIFF'S FAILURE TO INTERVENE CLAIM MUST BE DISMISSED, BECAUSE LAW ENFORCEMENT OFFICERS MUST KNOW ABOUT OTHERS' UNCONSTITUTIONAL ACTIONS AND MAY NOT BE SUED FOR SIMULTANEOUSLY ENGAGING IN AND FAILING TO INTERVENE TO PREVENT CONSTITUTIONAL VIOLATIONS.

Plaintiff's eighth cause of action for failure to intervene must also be dismissed, because Plaintiff has not pled the officers knew of a constitutional violation and officers cannot be liable for not intervening the constitutional violation they effectuate.

Federal law recognizes that law enforcement officers have "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (emphasis added). To be liable for failing to intervene, an officer must have known that a constitutional violation was being committed *and* have had a realistic opportunity to intervene to prevent the harm from occurring. *Anderson*, 17 F.3d at 557.

Plaintiff's failure to intervene claims must fail, because Plaintiff declined to include facts that (named or unnamed) officers *knew* constitutional violations occurred within the claim-specific content (Amended Complaint ¶¶ 143-149) or elsewhere.

10

A second reason calls for dismissal: a failure to intervene claim cannot lie against law enforcement officers who also engaged in that constitutional violation. Failure to intervene simply extends liability of constitutional violations, such that officers are *either* direct participants in constitutional violations *or* non-participants that become liable by failing to intervene. See *United States v. Scott*, 833 Fed Appx. 884, 887-888 (2d Cir. 2020) (explaining that an officer becomes a "tacit collaborator" in and liable for the constitutional violation by failing to intervene); *Hoyt v. Prack*, No. 13-cv-920S, 2016 U.S. Dist. LEXIS 31461, at *15 (W.D.N.Y March 8, 2016) ("An officer may be personally involved in the use of excessive force if he either directly participates in an assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so."). It is unnecessary (and somewhat illogical) to seek to hold an officer liable for a constitutional violation by claiming that officer failed to intervene, because he is already liable for the violation by having engaged in it. Yet Plaintiff has pled that officers are both participants and non-participants: officers "failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct." (Amended Complaint ¶ 171.)

This claim must be dismissed, because Plaintiff has failed to provide facts that any officers knew constitutional violations were occurring and improperly seeks to impose liability twice for the same action.

IV.  **PLAINTIFF'S NEGLIGENT SUPERVISION, TRAINING, AND DISCIPLINE CLAIMS AGAINST THE CITY MUST BE DISMISSED, BECAUSE PLAINTIFF CLAIMED THE CITY'S OFFICERS WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT.**

Plaintiff's eleventh cause of action must also be dismissed, because Plaintiff has not pled that RPD officers were acting outside of the scope of their employment, which is required for a claim that the City was negligent in training, supervising, and disciplining them.

In order for a municipality to be liable for negligence supervision, training, and hiring under New York State law, municipal employees must have been acting *outside* of the scope of their employment. *Velez v. City of New York*, 730 F.3d 128 (2d Cir. 2013). Plaintiff failed to state as much. In fact, instead of claiming City employee-officers acted outside the scope of their employment, Plaintiff repeatedly pleads they were acting *within* the scope of their employment (Amended Complaint ¶¶ 4, 108-109, 132). As Plaintiff alleges only that officers acted within the scope of their employment, Plaintiff has failed to provide facts that support City liability for negligent training, supervision, and hiring, and this Court must dismiss this—Plaintiff's eleventh claim for relief.

V. **PLAINTIFF'S NEGLIGENT PLANNING CLAIM MUST BE DISMISSED, BECAUSE PLAINTIFF FAILED TO ASSERT A SPECIAL RELATIONSHIP THAT WOULD GIVE RISE TO AN AFFIRMATIVE DUTY BY THE CITY TO PROTECT HIS RIGHTS.**

Plaintiff's twelfth claim must also be dismissed, because Plaintiff has not pled a special duty necessary for his claim that the City negligently planned its protest response.

Although Plaintiff entitles his eleventh claim "Negligent Planning of the Protest Response," he seeks City liability for alleged failure to provide police protection. The paragraphs of this cause of action repeatedly refer to safety, protection, and harm caused by the City's alleged negligence, e.g., "[t]he City breached [its] duty to keep demonstrators safe" (Amended Complaint ¶¶ 179, 185-189).

New York State municipalities, however, cannot be held liable for failing to provide police protection, unless a "special relationship" exists between the claimant and the municipality's police. *Cuffy v. New York*, 69 N.Y.2d 255, 260 [(N.Y. 1987); see also *Coleson v. City of New York*, 24 N.Y.3d 476, 481 (N.Y. 2014). The special relationship gives rise to a duty on which negligence may be claimed.

A special relationship forms in one of three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." *Pelaez v. Seide*, 2 N.Y.3d 186, 199-200 (N.Y. 2004). Most plaintiffs allege that they have justifiably relied on a voluntarily assumed duty, and plead the following elements to establish a special relationship in that way: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Cuffy*, 69 N.Y.2d at 260.

Plaintiff states in his allegations the City had a "special duty" towards himself and the protestors (Amended Complaint ¶ 176), but goes no further in pleading the elements of a special relationship between himself and the City. Plaintiff has not alleged a statutory duty imposed on the City, or the City's control of a safety violation. Plaintiff also never alleged he justifiably relied on the City's promises or actions, which in the interest of fairness would support the imposition of City liability. (Plaintiff has not, for example, alleged that the City assumed an affirmative duty towards his or knew their action might lead to his harm.) Plaintiff has simply failed to plead a special relationship—and thus failed to establish a duty owed by the City to the Plaintiff. Without a duty, Plaintiff's allegations in his twelfth claim for relief that the City breached its duty must be dismissed.

VI. **PLAINTIFF'S NEGLIGENCE CLAIM AGAINST THE INDIVIDUAL OFFICERS MUST BE DISMISSED, BECAUSE PLAINTIFF FAILED TO ASSERT A SPECIAL RELATIONSHIP THAT WOULD GIVE RISE TO AN AFFIRMATIVE DUTY BY THE CITY TO PROTECT HIS RIGHTS AND MUNICIPAL ACTORS MAY NOT BE LIABLE FOR DISCRETIONARY ACTS.**

For his thirteenth claim, Plaintiff alleges that the individual officers breached their duty towards her. This claim must be dismissed, because Plaintiff has not pled a special duty necessary for his claim that the City negligently planned its protest response, and officers may not be held liable for discretionary acts.

In New York State, law enforcement officers cannot be held liable for failing to provide police protection, unless a "special relationship" exists between the claimant and the municipality's police. *Cuffy v New York*, 69 N.Y.2d 255, 260 [1987]; see also *Coleson v City of New York*, 24 N.Y.3d 476, 481 [2014]. A special relationship—which gives rise to a duty—forms in one of three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." *Pelaez*, 2 N.Y.3d 186, 199-200 (N.Y. 2004).

Although Plaintiff stated in his allegations that officers had a duty to protect the protestors and their rights (Amended Complaint ¶¶ 176, 179, 185-189), he did not plead a special relationship that would give rise to such a duty towards protestors. Without a duty, Plaintiff's allegations in his sixteenth claim for relief that the officers breached their duty towards protestors must be dismissed.

Additionally, the New York State Court of Appeals has repeatedly held that under the government function immunity defense, "discretionary acts may not be the basis of liability" for municipalities or their employees—"even if resulting from negligence or malice." *McLean v. City of New York*, 12 N.Y.3d 194, 202 (N.Y. 2009); see also *Lauer v. City of New York*, 95 N.Y.2d 95, 99 (N.Y. 2000). Discretionary acts involve "the exercise of reasoned judgment which could typically

14

produce different acceptable results[.]" *Tango v. Tulevech*, 61 N.Y.2d 34, 41 (N.Y. 1983). (On the other hand, ministerial acts involve "direct adherence to a governing rule or standard with a compulsory result" (*Tango,* 61 N.Y.2d at 41) and may result in liability—if actions violate a special duty owed to an individual. *McLean*, 12 N.Y.3d at 203; *Lauer*, 95 N.Y.2d at 99-101.)

Most law enforcement activities—and certainly the ones pled here, i.e., using force against Plaintiff—inherently involve discretion and judgment. *Arias v. City of New York*, 22 A.D.3d 436, 437 (2d Dep't 2005) ("This immunity extends to the actions of police officers engaged in law enforcement activities, provided that the officers' actions are not inconsistent with acceptable police practice[.]"); see also *Davila v. City of New York*, 139 A.D.3d 890, 894-895 (2d Dep't 2016) (affirming that officers allegedly negligent acts in restraining individual with mental illness were discretionary). Plaintiff alleges police officers were negligent in using force against a groups of protesters (Amended Complaint ¶¶ 192-198) when these officers were responding to "hundreds of protestors"—possibly thousands—in an evolving situation (Amended Complaint ¶¶ 21, 17). The officers exercised their judgment and determined the level of force to use in response to the situation, which means the officers are immune from liability for any negligence in those discretionary acts.

## CONCLUSION

For the foregoing reasons, City Defendants respectfully request that the Court grant their motion to dismiss the first, seventh, eighth, eleventh, twelfth, and thirteenth causes of action, and award City Defendants such other relief as the Court deems proper.

Date: January 18, 2022

LINDA KINGSLEY
CORPORATION COUNSEL

By: /s/ Peachie L. Jones
Peachie L. Jones, Esq., Of Counsel
*Attorneys for City Defendants*
30 Church Street, Room 400A
Rochester, NY 14614
(585) 428-7992
peachie.jones@cityofrochester.gov

To the following via ECF:

Co-counsel for Plaintiff

Elliot Dolby Shields
ROTH AND ROTH LLP
192 Lexington Avenue, Suite 802
New York, NY 10016
(212) 425-1020 | eshields@rothandrothlaw.com

Donald Thompson
EASTON THOMPSON KASPEREK SHRIFFIN
16 West Main Street, Suite 243
Rochester, NY 14614
(585) 423-8290 | dmthompson@etksdefense.com

Attorney for Defendant Todd Baxter

Maria E. Rodi
MONROE COUNTY LAW DEPARTMENT
307 County Office Building
39 West Main Street
Rochester, NY 14614
(585) 753-1495 | MariaRodi@MonroeCounty.gov