UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER HILDERBRANT,

                              Plaintiff,

                                                    Case # 21-CV-6714-FPG

v.

                                                    DECISION AND ORDER

THE CITY OF ROCHESTER, et al.,

                              Defendants.

## INTRODUCTION

This is one of many cases pending before the Court that arises out of protests that erupted in the City of Rochester in September 2020 following the release of news that Daniel Prude, an unarmed black man, died during an encounter with police in March 2020. Plaintiff Christopher Hilderbrant—a protester who alleges he was injured and handcuffed during the protests—filed this action in state court against the City of Rochester ("City"), Rochester Police Department ("RPD") Officers Andrew Delduca, Bing Reaves, Anthony Mazurkiewicz, Michael DiPaola, and John Doe Police Officers 1-200, the County of Monroe (the "County"), Monroe County Sheriff Todd Baxter ("Baxter"), and Richard Roe Sheriff's Deputies 1-200,[1] for multiple federal and state claims. The City removed the case to federal court on November 22, 2021. ECF No. 1. In response to a motion to dismiss, Plaintiff filed an Amended Complaint on January 3, 2022. ECF No. 8.

In the Amended Complaint, Plaintiff raises 13 claims: (1) municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; (2) municipal/*Monell* liability against the County and Baxter for alleged

---

[1] RPD Officers Delduca, Reaves, Mazurkiewicz, DiPaola, and individual unknown officers ("RPD Officers") and the City are collectively referred to as "City Defendants." The County, Baxter, and unknown individual Sheriff's deputies are collectively referred to as "County Defendants." The RPD Officers and Sheriff's deputies are collectively referred to as "Individual Officers." All defendants are collectively referred to as "Defendants."

violations of the First, Fourth, and Fourteenth Amendments, pursuant to § 1983; (3) excessive force against all Defendants, pursuant to § 1983; (4) assault and battery against all Defendants, pursuant to New York State law; (5) unlawful seizure/false arrest against RPD Officers, pursuant to § 1983; (6) unlawful seizure/false arrest against City Defendants, pursuant to New York State law; (7) First Amendment infringement and retaliation against all Defendants, pursuant to § 1983; (8) failure to intervene against all Defendants, pursuant to § 1983; (9) negligent training, supervision, and discipline against Baxter, pursuant to New York State law; (10) negligent planning of the protest response against Baxter, pursuant to New York State law; (11) negligent training, supervision, and discipline against the City, pursuant to New York State law; (12) negligent planning of the protest response against the City, pursuant to New York State law; and (13) negligence against the individual officers, pursuant to New York State law.

On January 19, 2022, the City Defendants filed a motion to dismiss all claims asserted against them in the Amended Complaint except the claims for excessive force, assault and battery, and false arrest.   ECF No. 14.   On February 28, 2022, the County Defendants filed a motion to dismiss all of the claims asserted against them.   ECF No. 20.   The motions are now fully briefed.

## FACTUAL BACKGROUND

Plaintiff—who is a resident of the City and uses a wheelchair because he is paralyzed from the waist down—participated in large public demonstrations on the night of September 4-5, 2020. ECF No. 8 ¶ 19.   At approximately 10:47 p.m. that night, the RPD Officers arrested Plaintiff, "grabbed [Plaintiff's] left arm and dragged him approximately ten feet across the pavement" and "threw his chair to the ground." *Id.* ¶¶ 25-30.   Plaintiff was taken into custody and, after over two hours of discussions regarding how to transport Plaintiff with his wheelchair, he was released without being charged with any crime. *Id.* ¶¶ 38-40.

Plaintiff alleges, *inter alia*, that Defendants failed to intervene on Plaintiff's behalf, that the police response to the protests and protesters was part of an unconstitutional municipal practice, that Defendants failed to properly train officers in proper protest responses, and that Defendants acted negligently in planning for and responding to the protests.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible when the plaintiff pleads facts sufficient to allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct.  *Id.*  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  At the same time, the Court is not required to credit "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . [with] a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citations and quotations omitted).  The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedures 8(a) and 12(b)(6) is plausibility."  *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61).  To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

**I.     First and Second Claims: Municipal Liability Pursuant to *Monell***

In his first and second claims, Plaintiff seeks to hold the City, the County, and Baxter liable for First and Fourth Amendment violations under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978).  In essence, Plaintiff asserts that the individual officers who caused his injuries were acting in accordance with the City's and County's unconstitutional customs or policies relating to the use of force during peaceful protests.  Defendants, for their part, argue that Plaintiff has not adequately pled such a custom or policy.   For the reasons explained below, the Court disagrees with Defendants and permits the *Monell* claims to proceed.

**A.     Legal Standard**

"[A] local government is liable under § 1983 for its policies that cause constitutional torts." *McMillian v. Monroe Cnty., Alabama*, 520 U.S. 781, 784 (1997); *see Monell*, 436 U.S. at 693.  A plaintiff who seeks to impose liability on local governments pursuant to 42 U.S.C. § 1983 must demonstrate that "action pursuant to official municipal policy" caused the injury.  *Monell*, 436 U.S. at 692.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691) (additional citations omitted).  A plaintiff may demonstrate a policy or custom exists by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, . . . a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (internal quotation marks and brackets omitted). "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (S.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases). Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (internal quotation marks omitted); *see also Cruz*, 2022 WL 428247, at *6 ("Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (internal quotation marks omitted)).

**B.      First Claim: Municipal Liability Against the City**

Plaintiff has adequately pled a *Monell* claim against the City. At the outset, the City's argument that Plaintiff has not pled any underlying First or Fourth Amendment constitutional violations is without merit. The City is correct that *Monell* does not provide a separate cause of action absent an underlying constitutional violation. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that

organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (emphasis in original)).  But, as explained more fully below, Plaintiff has pled adequate First and Fourth Amendment violations: that the City's response to the protests was based on its objection to the message the protestors were expressing, and that the City's actions or inactions led to excessive force being used against protestors.[2]  ECF No. 8 ¶ 47.

The City's arguments regarding Plaintiff's theories of *Monell* liability do not fare better.  The City argues that Plaintiff's statement that the City "approved the force during the demonstrations because its policies authorized excessive levels of force," ECF No. 8 ¶ 64, is conclusory.  But the City's argument is itself conclusory.  It ignores that the Amended Complaint contains additional facts bolstering that allegation.  For instance, Plaintiff alleges that the City knew that large-scale protests focused on police misconduct and racism would result from the eventual release of the body-worn camera footage, *id.* ¶ 44, the City believed that the protests would be led by outside influencers who would use peaceful protestors to shield themselves from police action, *id.* ¶¶ 45-46, and therefore, the City developed a protest response plan that targeted peaceful protestors based on an objection to their message and employed "extreme violence" through the use of military-grade and chemical weapons, *id.* ¶ 47, to quash the protests.  These factual allegations, assumed to be true at this juncture, are not conclusory.

Nor are Plaintiff's allegations surrounding the City's custom of using excessive force against protestors or its failure to train officers to appropriately respond to such protests.  Plaintiff alleges that the City's response to at least three previous protests, in which the police used

---

[2] The City's contention that Plaintiff has failed to adequately plead an underlying Fourteenth Amendment violation is without merit.  The Court does not read Plaintiff's Amended Complaint to raise an independent claim arising under the Fourteenth Amendment.  Rather, Plaintiff cites the Fourteenth Amendment in accordance with the well-established rule that the Fourteenth Amendment is the vehicle through which the First and Fourth Amendments apply against the states.  *See Cantwell v. Connecticut*, 310 U.S. 296 (U.S. 1940) (incorporating the First Amendment against the states); *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528(1967) (incorporating the Fourth Amendment against the states).

excessive force against peaceful protestors, establishes that the City had a custom of utilizing such force and that the City knew of its training deficiencies but failed to change them. *Id.* ¶¶ 59-60. Plaintiff also alleged that the City's Mobile Field Force ("MFF")—which was "specially trained and equipped" to provide "rapid, organized and disciplined response to civil disorder [and] crowd control," *id.* ¶ 51—was militarized and filled with police officers who had histories of using excessive force, *id.* ¶ 58, and was not actually or adequately trained to appropriately respond to protests, only "large-scale civil disorders such as riots," *id.* ¶¶ 55-57. This, in turn, led to the disproportionate use of force against peaceful protestors. *Id.* ¶ 57. Again, these allegations are far from the sort of conclusory statements that require dismissal. Therefore, the City's motion to dismiss the first claim for *Monell* liability is denied.

> **C.     Second Claim: Municipal Liability Against the County and Baxter**

The allegations against the County and Baxter largely mirror those Plaintiff asserted against the City. And, for many of the same reasons, the County and Baxter move to dismiss those claims asserted against them. However, for the same reasons explained above with respect to the City, the County and Baxter's motion to dismiss the municipal liability claim is denied.

The County and Baxter also take issue with Plaintiff's reference in the Amended Complaint to the County's "Hazard Mitigation Plan," under which the County trained Sheriff's deputies to use force for both "peaceful demonstrations or acts of violence." ECF No. 8 ¶ 73. The County and Baxter argue that this Hazard Mitigation Plan is intended to "reduce the potential impact of natural hazards" and therefore "clearly has nothing to do with training for Sheriff's deputies for responding to a protest." ECF No. 20-3 at 10-11. However, the County and Baxter ignore the crux of Plaintiff's other allegations, which, like those against the City, detail unconstitutional municipal policies, practices, and training failures.

For example, Plaintiff alleges that Baxter and the County subscribed to theory that Black Lives Matter protests were led by outside agitators, ECF No. 8 ¶ 67, that violent protestors would use nonviolent protestors as human shields, *id.* ¶ 68, that the County and Baxter coordinated with the City and RPD to develop a coordinated protest response plan that included using disproportionate violence centered on retaliation for the message the protestors were expressing, *id.* ¶ 69, and that Baxter and the County failed to train Sheriff's deputies to meaningfully differentiate between peaceful protestors and violent ones, *id.* ¶¶ 71-73. These allegations plausibly allege an unconstitutional custom or practice.

Unlike Plaintiff's allegations against the City, the Amended Complaint does not contain specific allegations of prior instances in which the Sheriff's Office used excessive force against protestors. The County and Baxter argue that the absence of such allegations demonstrates that neither could have had knowledge that any problems were widespread. However, Plaintiff *does* allege that prior to the protests which are the subject of this lawsuit, County legislators called on the Sheriff's Office to implement new training protocols to correct its deficient practices. *Id.* ¶ 82. Although this is a close call, the Court determines at this early stage that such factual allegations are sufficient to survive the motion to dismiss.

## II.    Third Claim: Excessive Force

Only the County Defendants move against Plaintiff's excessive force claim, which is asserted against all Defendants.

The allegations against the County Defendants are thin, but, at this juncture, they survive dismissal. To the extent Plaintiff asserts his excessive force claim against Baxter, that claim will not be dismissed. "A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983." *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 475

(W.D.N.Y. 2017).  The Amended Complaint contains no allegations that Baxter personally used excessive force on Plaintiff.  However, as explained below, Plaintiff alleges that unknown Sheriff's deputies used excessive force against him.  The Second Circuit has recognized "the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability."  *Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998).  Accordingly, the Court will not dismiss Baxter from the case until Plaintiff has an opportunity to conduct discovery as to the identities of the Sheriff's deputies.  Once such discovery reveals the identifies of the Sheriff's deputies, Baxter may again move to dismiss.  *Murphy v. Goord*, 445 F. Supp. 2d 261 (W.D.N.Y. 2006) (denying supervisor's motion to dismiss so that plaintiff could conduct discovery to ascertain identity of John Doe defendants).

The remaining County Defendants argue that the claims against individual, unnamed sheriffs must be dismissed because Plaintiff's allegations constitute impermissible "group pleading" and that Plaintiff has not alleged that County Defendants used the requisite force.  ECF No. 20-3 at 13-16.

First, the County Defendants argue that Fourth Amendment liability is premised on the use of "excessive force when detaining or arresting individuals," and that the Amended Complaint contains no allegation that any County Defendant used excessive force against Plaintiff during his arrest.  ECF No. 20-3 at 13-14; *see Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).  To be sure, the Amended Complaint only contains allegations that RPD Officers arrested Plaintiff; therefore, only *they* used excessive force during the arrest.

But, at this stage, Plaintiff has adequately alleged that unknown Sheriff's Deputies used "less-than-lethal" military-grade weapons and chemical weapons against protestors before

Plaintiff's arrest and that this force was unconstitutionally excessive. ECF No. 8 ¶ 96. More specifically, Plaintiff alleges that Sheriff's Deputies subjected Plaintiff to a "large amount of chemical weapons" prior to his arrest. *Id.* ¶ 24. Courts have routinely concluded that the use of such weapons against protestors constitutes a seizure for purposes of the Fourth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 540-42 (2d Cir. 2018) ("Our sister circuits and district courts in this Circuit have routinely applied excessive force principles to crowd control situations.").

The County Defendants argue that Plaintiff "tacked on" allegations of Sheriff's Deputies using excessive force in an attempt to "draw the remaining unnamed law enforcement officers into the allegations." [3] ECF No. 8 at 15. A complaint that "lump[s] all the defendants together in each claim provid[es] no factual basis to distinguish their conduct . . . . fail[s] to satisfy [the] minimum [pleading] standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted). But Plaintiff has not lumped all Defendants' conduct together. Rather, he claims that unknown Sherriff's Deputies used chemical weapons on him during the protest, prior to his arrest. That is a specific allegation regarding as-of-yet unknown deputy or deputies. Given the presence of law enforcement from multiple jurisdictions at the protests, such a claim is not implausible. The Court will permit Plaintiff to conduct discovery to determine the identities of any such Sheriff's Deputies.

## III.    Fourth Claim: Assault & Battery

The County Defendants move to dismiss the Fourth Claim for assault and battery for the same reasons they move to dismiss the Third Claim for excessive force. "Courts in the Second Circuit have found that [f]ederal excessive force claims and state law assault and battery claims

---

[3] The County Defendants repeat this same argument as a reason to dismiss each claim. For the same reasons outlined below with respect to the excessive force claim, the Court finds this argument unpersuasive as a basis to dismiss the remaining claims.

against police officers are nearly identical." *John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017) (internal quotation marks omitted).  Therefore, for the same reasons articulated above, the County Defendants' motion to dismiss the Fourth Claim for assault and battery is denied.

## IV.    Seventh Claim: First Amendment Infringement & Retaliation

The Amended Complaint advances two theories of First Amendment liability: (a) that Defendants "retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment" and (b) that Defendants "imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to subjecting Plaintiff to excessive force, in arresting and prosecuting [P]laintiff, in selectively enforcing laws and regulations against Plaintiff, and in otherwise violating Plaintiff's rights."[4]  ECF No. 12 ¶ 159.

### A.    Retaliation

The City Defendants do not explicitly move against the retaliation theory, but the County Defendants do. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Defendants do not seriously contest the first two elements, focusing instead on the third. To that end, the County Defendants argue that Plaintiff has not established any constitutional injury because Plaintiff has not alleged any "specific instances in which [Plaintiff] desired to exercise [his] First Amendment rights but [were] chilled by" Defendants' conduct.  ECF No. 20-3 at 19.

---

[4] It is unclear whether these two theories are distinct.  But, because the parties treat them differently, the Court will address them separately.

However, the Amended Complaint states that Plaintiff "was prevented from further protesting on the night of September 4-5, 2020 when he was arrested" and that the "excessive violence" on subsequent nights of protesting "chilled and deterred him from engaging in future protests, for fear of being subjected to similar unlawful actions by law enforcement."  ECF No. 8 ¶ 43.

To the extent Defendants argue that the City's emergency order vitiates any First Amendment retaliation claim, that argument is misplaced.  The City Defendants insist that "this court has already found that the City complied with reasonable time, place, and manner restrictions on free speech."  ECF No. 14-2 at 9.  That is not entirely accurate.  To be sure, in *Martin v. Warren*, 482 F. Supp. 3d 51 (W.D.N.Y. 2020), District Judge Charles J. Siragusa denied plaintiff-protestors' motion for a preliminary injunction, concluding that they were not likely to succeed on their arguments that the emergency order's curfew was pretextual, unrelated to significant government interests, or not narrowly tailored.  But he did not affirmatively find that the emergency order was a reasonable time, place, and manner restriction.  And even if he did, there is nothing to suggest that police action purportedly taken under the emergency order could not supply the basis for a retaliation claim.  Finally, as Plaintiff points out, many of the alleged retaliatory acts did not take place during the time the emergency order was in force.

## B.    Viewpoint Discrimination

Government "[d]iscrimination against speech because of its message is presumed to be unconstitutional."  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).  "Viewpoint discrimination is a subset or particular instance of the more general phenomenon of content discrimination, in which the government targets not subject matter but particular views taken by speakers on a subject."  *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 150 (2d

Cir. 2004) (quoting another source).  The government discriminates against viewpoints when it disfavors certain speech because of "the specific motivating ideology or the opinion or perspective of the speaker."  *Rosenberger*, 515 U.S. at 829.

Plaintiff alleges that Defendants' response to the protestors and use of excessive force against them was motivated by the viewpoint the protestors espoused: "calling for greater police accountability, a reallocation of funding away from police departments and into Black and Latinx communities, the end of police brutality, and a recognition that Black Lives Matter."  ECF No. 8 ¶ 42.

Defendants seem to assume that Plaintiff's arrest was made pursuant to the emergency order and suggest that the injury cannot form the basis of viewpoint discrimination because the emergency order itself is viewpoint neutral.  But the emergency order was not in effect at the time of Plaintiff's arrest,[5] and it does not absolve Defendants of all of their actions, especially those actions that were not explicitly made pursuant to it.  Defendants do not argue otherwise.

As this stage, at least, Plaintiff's First Amendment claims may proceed.

## V.      Eighth Claim: Failure to Intervene – Individual Officers

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting another source).  To state a claim against an officer for his or her failure to intervene, a plaintiff must allege facts demonstrating that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's

---

[5] On September 3, 2020, Rochester Mayor Lovely A. Warren issued the "Local Emergency Order Pursuant to Executive Law – Section 24."  This emergency order made it "unlawful to gather in groups of five or more in a public place in the City of Rochester" "between the hours of 11:00 p.m. and 5:00 a.m."  ECF No. 14-1 at 38.  Violations were punishable as class B misdemeanors.  Plaintiff was arrested at 10:47 p.m.  ECF No. 8 at ¶ 25.

constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Individual Officers argue first that Plaintiff has failed to plead the second element—that they knew that Plaintiff's constitutional rights were being violated. ECF No. 14-2 at 10. Although this claim in the Amended Complaint does not contain the words "knew" or "knowledge," it does state facts sufficient to infer knowledge. For example, the Amended Complaint contains facts suggesting that Individual Officers were in close proximity to the alleged constitutional violations as they were occurring and were therefore aware of them. *See* ECF No. 8 ¶¶ 16-43 (describing the actions of officers and deputies in arresting and beating Plaintiff). These allegations are sufficient to proceed to discovery. *Weaver v. City of New York*, No. 13-CV-20 CBA SMG, 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("Because [plaintiff's] complaint alleges facts from which this Court could reasonably infer that at least one of the defendants had reason to know that [plaintiff] was being unjustifiably arrested, her claim may proceed.").

Second, Individual Officers argue that "a failure to intervene claim cannot lie against law enforcement officers who also engaged in that constitutional violation." ECF No. 14-2 at 11. Essentially, Individual Officers urge the Court to dismiss the failure to intervene claim because Defendants could not possibly have committed the underlying constitutional violations (such as excessive force and false arrest) while they simultaneously failed to intervene to prevent those same violations.

That is a misreading of the facts and law. Plaintiff alleges multiple constitutional violations, and it is possible that a defendant directly participated in one constitutional violation while he failed to intervene in another. Moreover, "the plaintiff is allowed to plead in the alternative" and "the alternative claims need not be consistent." *Breton v. City of New York*, 404

F. Supp. 3d 799, 814 (S.D.N.Y. 2019) (declining to dismiss failure to intervene claim on the basis that defendant "directly participated in both the arrest and prosecution and therefore could not have intervened").

## VI.    Ninth Claim: Negligent Training, Supervision, and Discipline – Baxter

"It is well-settled under New York law that a sheriff may not be held vicariously liable for the torts committed by its employees while they are performing a criminal justice function." *Ryan v. Moss*, No. 11-CV-6015P, 2013 WL 956722, at *18 (W.D.N.Y. Mar. 12, 2013).  There is no question that the Sheriff's Deputies here were performing a criminal justice function during the protests.

However, in contrast to *respondeat superior* liability, "a sheriff *may* be held liable for his own negligent conduct, including a failure to train or supervise his subordinates." *Id.* at *19 (emphasis added); *see Cash v. Cnty of Erie*, No. 04-CV-182C(F), 2007 WL 2027844, at *5 (W.D.N.Y. July 11, 2007) ("[A] cause of action sounding in negligence is legally sustainable against a [sheriff] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer.").

Baxter argues that he cannot be held liable for his own alleged negligent conduct if the Sheriff's deputies were acting outside the scope of their employment.  This argument conflates the unique standard for a sheriff's liability under a negligent training, supervision, and discipline theory, with the standard for other municipal employers, explained below with respect to the City.  Baxter's argument, therefore, is misplaced.

So too is Baxter's argument that the Amended Complaint is devoid of allegations that Baxter was ever aware of any supervision or training failures.  ECF No. 20-3 at 23.  As explained above with respect to *Monell* liability, Plaintiff has alleged that Baxter took "no steps to train

Sheriff's Deputies on lawfully policing protests and other First Amendment activities," ECF No. 8 ¶ 72, and that Baxter failed to train Sheriff's Deputies on how to distinguish peaceful protests from acts of violence and how they should respond to each differently, *id.* ¶ 76.   Accordingly, Baxter's motion to dismiss the negligent training, supervision, and discipline claim is denied.

## VII.    Tenth Claim: Negligent Planning – Baxter

Plaintiff asserts a claim against Baxter for his own negligent planning of the protest response.   Baxter and Plaintiff agree that a "special duty" is required to establish a negligence claim against Baxter, but Baxter argues that Plaintiff has not established that Baxter owed a "special duty" to Plaintiff and that the absence of such a "special duty" is fatal to his claim.   The Court agrees with Baxter that Plaintiff must allege a "special duty," but it concludes that—at least for purposes of this motion to dismiss—Plaintiff has done so.

"When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose." *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting another source).   "A municipality performs a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers." *Id.* at 134-35.   "Where, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.* at 135.   It is Plaintiff's burden to establish a special relationship and "where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013).

To establish such a special relationship, Plaintiff must plead four elements:

(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.*

Plaintiff argues that no special duty/relationship is required where, as here, the municipality has not failed to protect Plaintiff against a *third party*; rather, Plaintiff argues that Baxter negligently failed to protect protestors against himself and his deputies.  There is no support for this argument.  To be sure, many of the "special relationship" cases the parties cite involve third parties.  But the New York Court of Appeals recently confirmed that "plaintiffs must establish that a municipality owed them a special duty when they assert a negligence claim *based on actions taken by a municipality acting in a governmental capacity*."  *Ferreira v. City of Binghamton*, No. 10, 2022 WL 837566, at *1 (N.Y. Mar. 22, 2022) (emphasis added).  In *Ferreira*, the Second Circuit certified the following question to the New York Court of Appeals:

Does the "special duty" requirement—that, to sustain liability in negligence against a municipality, the plaintiff must show that the duty breached is greater than that owed to the public generally—apply to claims of injury inflicted through municipal negligence, or does it apply only when the municipality's negligence lies in its failure to protect the plaintiff from an injury inflicted other than by a municipal employee?

*Id.* at *2.  The New York Court of Appeals answered that a plaintiff must plead a special duty even where, as here, Plaintiff alleges injury from a municipal employee's direct negligence, rather than from a municipality's failure to protect Plaintiff from some third party.  It explained that a rule, like that advanced by Plaintiff "purporting to draw a distinction between those negligence claims alleging injuries inflicted by municipal actors and those in which the injury is alleged to be inflicted by a nongovernmental actor [ ] is belied by our precedent, unworkable, and contrary to the public

policies upon which the special duty requirement is founded." *Id.* *6.  Accordingly, Plaintiff must establish a special duty to survive a motion to dismiss the negligent planning claim.

Here, Plaintiff alleges that Baxter "had a special duty to ensure that the rights of Plaintiff and other protestors to free speech, expression and to assemble under Article I, section 8 of the New York State Constitution were not violated, and that protestors were not assaulted, battered, and subjected to excessive force and/or falsely arrested by law enforcement."  ECF No. 8 ¶ 158.  Although courts have not specifically found that a special duty arises in these circumstances, *Ferreira* is instructive.

There, the police obtained information that Michael Pride—a suspect who police believed to be armed and dangerous—resided at a certain apartment in Binghamton.  *Ferreira*, 2022 WL 837566, at *1.  The police obtained a no-knock warrant for the residence, surveilled the residence, and observed Pride leave the residence.  The police never saw Pride return to the apartment or conduct additional surveillance.  But because the police believed Pride to be heavily armed and dangerous, the following morning, they executed the no-knock warrant with a SWAT team.  Upon entry, the police encountered plaintiff, who was unarmed, and shot him in the stomach.  Plaintiff sued Binghamton and the police department in federal court, alleging that defendants were negligent in planning the raid.  *Id.* *2.  A jury determined that Binghamton was negligent and it appealed to the Second Circuit, which certified the "special duty" question to the New York Court of Appeals.  As explained above, the New York Court of Appeals determined that a plaintiff must establish a "special duty" when suing a municipality in negligence for an injury it directly inflicted.  But the court noted that "because the underlying premise of the certified question appears to be that a special duty could not be established in a scenario like the one presented, we take this

opportunity to clarify that this is not the case: a special duty may be established where the police

plan and execute a no-knock search warrant on a targeted residence." *Id.* at *8.

The court explained that execution of a no-knock warrant raises a "special duty" because

"when police plan and execute a no-knock warrant, they effectively take control of the targeted

premises, knowingly creating an unpredictable and potentially dangerous condition at a particular

premises." *Id.* at *9.  The court further explained that

> [i]n a no-knock warrant situation, the police exercise extraordinary governmental
> power to intrude upon the sanctity of the home and take temporary control of the
> premises and its occupants. In such circumstances, the police direct and control a
> known and dangerous condition, effectively taking command of the premises and
> temporarily detaining occupants of the targeted location. As a result, the
> municipality's duty to the individuals in the targeted premises, a limited class of
> potential plaintiffs, exceeds the duty the municipality owes to the members of the
> general public. A special duty therefore arises when the police plan and execute a
> no-knock search warrant at an identified residence, running to the individuals
> within the targeted premises at the time the warrant is executed. In other words, in
> those circumstances, the police take positive control of a known and dangerous
> condition, creating a special duty under the third situation recognized by this Court.

*Id.*

Although this case does not present the no-knock situated addressed in *Ferreira*, there are

some compelling similarities.  Indeed, like executing a no-knock warrant, law enforcement

responding to a protest may in some senses take "positive control of a known and dangerous

condition"—one that is dynamic, potentially dangerous, and buttressed by constitutional

protections.  That is what Plaintiff alleges here.  *See, e.g.*, ECF No. 8 ¶ 19 (alleging that police

"used the Court Street bridge to 'kettle' protestors, spray them with tear gas, and attack them with

pepper balls"); ¶¶ 20-22 (alleging that police shepherded peaceful protestors toward the Public

Safety Building and then stopped them with metal barricades and ordered them to disperse before

using excessive force).  Neither party cites cases—let alone any cases post-*Ferreira*—addressing

the unique facts presented here.  Given *Ferreira*'s reasoning and the absence of case law

confirming that special duty does not exist—while also recognizing the absence of case law directly on point establishing such a special duty in these circumstances—the Court concludes that the claim should proceed.   While the Court cannot say with certainty that a special duty exists in the circumstances presented by Plaintiff here, the Court finds that Plaintiff's allegations are sufficient to survive the motion to dismiss.[6]

## VIII.   Eleventh Claim: Negligent Training, Supervision, and Discipline – City

The City moves to dismiss this claim and Plaintiff does not appear to oppose dismissal. "To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment.  If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*."[7]  *Velez*, 730 F.3d at 136 (internal quotation marks omitted).

Here, the Amended Complaint states that "[a]t all relevant times" the RPD Officers "were acting within the scope of their employment."  ECF No. 8 ¶ 4.  Therefore, there can be no claim for negligent training, supervision, and discipline against the City, and the City's motion to dismiss that claim is granted.

---

[6] Baxter does not argue that he cannot be held liable for this negligent planning claim under a theory of *respondeat superior*, as in the negligent training, supervision, and discipline claim.  The parties do not distinguish Baxter's own alleged negligent actions in failing to properly plan the protest response from the negligent actions of his employees. Nor do they argue that the "special duty" requirement does not apply to Baxter because, as sheriff, he is not a municipality.   Accordingly, the Court declines to engage further in any such analysis.   *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

[7] Notably, this standard is different than the standard for negligent training, supervision, and discipline against a county sheriff, as described above.

IX.    **Twelfth Claim: Negligent Planning – City**

Plaintiff alleges the existence of a special duty flowing from the City to the protestors. ECF No. 8 ¶ 176 ("The CITY had a special duty to ensure that the rights of Plaintiff and other protestors to free speech, expression and to assemble under Article I, section 8 of the New York State Constitution were not violated, and that protestors were not assaulted, battered, or subjected to excessive force and/or falsely arrested by law enforcement."). For the same reasons articulated above with respect to Baxter, the City's motion to dismiss the negligent planning claim is denied.

X.    **Thirteenth Claim: Negligence**

Plaintiff alleges that Individual Officers are liable under a negligence theory on the basis that they had duties to "permit the protestors to engage in First Amendment Activities" and "not use force against any individual protestor in the absence of individualized cause or legal justification," and that they breached those duties. ECF No. 8 ¶¶ 194-96. However, this is the same conduct for which Plaintiff asserts his battery, failure to protect, and excessive force claims. While, as discussed above, a plaintiff may plead in the alternative, where, as here, he alleges intentional conduct—such as for battery or excessive force—"he fails to state negligence." *Strobridge v. City of Elmira*, No. 20-CV-1125S, 2022 WL 597464, at *11 (W.D.N.Y. Feb. 28, 2022). Accordingly, Plaintiff's negligence claims against individual defendants are dismissed.

**CONCLUSION**

For the reasons explained above, the Defendants' motions to dismiss, ECF Nos. 14, 20, are GRANTED IN PART and DENIED IN PART. The Eleventh and Thirteenth claims are DISMISSED in their entirety. The following claims may proceed:

(1)    municipal/*Monell* liability against the City for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983;

(2)     municipal/*Monell* liability against the County and Baxter for alleged violations of the First, Fourth, and Fourteenth Amendments, pursuant to § 1983;

(3)     excessive force against all Defendants, pursuant to § 1983;

(4)     assault and battery against all Defendants, pursuant to New York State law;

(5)     unlawful seizure/false arrest against RPD Officers, pursuant to § 1983;

(6)     unlawful seizure/false arrest against City Defendants, pursuant to New York State law;

(7)     First Amendment infringement and retaliation against all Defendants, pursuant to § 1983;

(8)     failure to intervene against all Defendants, pursuant to § 1983;

(9)     negligent training, supervision, and discipline against Baxter, pursuant to New York State law;

(10)    negligent planning of the protest response against Baxter, pursuant to New York State law; and

(12)    negligent planning of the protest response against the City, pursuant to New York State law.

A status conference is scheduled in all protest-related cases for July 21, 2022, at 3:00 p.m.

IT IS SO ORDERED.

Dated: June 30, 2022
        Rochester, New York                    HON. FRANK P. GERACI, JR.
                                               United States District Judge
                                               Western District of New York

22